UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RASHID BROWN #183346,

    Plaintiff,

v.                                                                                                         Case No. 2:05-cv-225
                                                                                                        HON. ROBERT HOLMES BELL

LYNNE PHILLIPSON,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

        Plaintiff Rashid Brown, an inmate currently confined at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendant Case Manager Lynne Phillipson. Defendant previously filed a motion for summary judgment, which was denied on September 19, 2006. Defendant has now filed a second motion for summary judgment (docket #37).

        Plaintiff's complaint alleges that on June 20, 2005, he gave Defendant an envelope addressed to the Director of the MDOC, which contained grievance appeals for LMF-0505-1545-12e4 and LMF-0505-1509-12e4. Defendant took the envelope and signed the expedited disbursement form. Plaintiff asked Defendant why she would not allow him to place the time on the disbursements, and asked to see Defendant's watch for the correct time because Defendant had placed the wrong time on the other disbursements. Defendant refused Plaintiff's request and took his receipt off the food slot. Plaintiff observed that Defendant wrote something on the receipt as she

walked down the wing. Plaintiff asked Defendant why she kept "playing games" with his mail. Defendant responded that Plaintiff was not to tell her how to do her job.

Plaintiff states that Defendant subsequently wrote a misconduct on him for allegedly stroking his penis while she was processing his notary request. The next day, Plaintiff asked Defendant to process some legal mail she had notarized the previous day, but Defendant just walked by and did not pick up the mail. Plaintiff also "had some words about the false misconduct" Defendant had written. On June 22, 2005, Plaintiff asked Defendant if she processed his mail, but she just laughed. Plaintiff then wrote the business office to asked if they had received his mail and was told that they had not processed Plaintiff's letter to the MDOC Director's office. On June 23, 2005, Plaintiff wrote a grievance on Defendant for failing to process his mail, which was denied by Case Manager Johnson.

Plaintiff claims that Defendant violated his First Amendment right to be free from retaliation, as well as his Fourteenth Amendment right to equal protection. Plaintiff is seeking compensatory and punitive damages, as well as equitable relief.

Presently before the Court is Defendant's Second Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at

324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendant states that she is entitled to summary judgment on Plaintiff's claims. In support of her motion, Defendant offers her affidavit and a copy of the misconduct ticket and hearing report addressing the events of June 20, 2005. (*See* docket #13, Exhibits A, B, and C.) According to Defendant's affidavit, on June 20, 2005, she was processing outgoing mail for administrative segregation prisoners on the unit was Plaintiff was located. When Defendant approached Plaintiff's cell, he was appropriately dressed. Defendant opened Plaintiff's food slot and retrieved his expedited legal mail and performed notary services for him. After Plaintiff signed the expedited mail forms, Defendant placed them on the cart and continue performing notary services on Plaintiff's behalf. Defendant then placed some of the mail on the food slot so that Plaintiff could seal the envelope. When Plaintiff turned around from the writing surface in his cell, he had his penis exposed and started to advance toward the still open food slot. Defendant closed the food slot, which still had mail on it and the mail fell to the floor of Plaintiff's cell. Defendant made sure that

the food slot was secure and ordered Plaintiff to cover up. Plaintiff refused and Defendant wrote a major misconduct report charging him with sexual misconduct. The mail that had fallen inside Plaintiff's cell was not processed that day because of Plaintiff's inappropriate behavior.

In Plaintiff's complaint, he alleges that Defendant arbitrarily took his envelope containing grievance appeals and censored the mail without any penological explanation in violation of his First Amendment rights. As noted by Defendant, prisoners retain a First Amendment right to send and receive mail which is subject to legitimate penological interests. *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safley*, 482 U.S. 78 (1987). Defendant states that prison officials have a legitimate penological interest in curtailing the sexual misconduct of prison inmates, and a refusal to provide notary or other services to an inmate who chooses to masturbate during the provision of those services serves that interest. Defendant contends that she discontinued processing Plaintiff's mail on June 20, 2005, because Plaintiff engaged in sexual misconduct during the process, but that the mail Defendant had in her possession was processed.

In response to this assertion, Plaintiff states that Defendant did not process any of his mail on June 20, 2005, despite her claim that it was only the mail which had fallen in Plaintiff's cell that was not processed. Plaintiff contends that he gave Defendant three pieces of mail, and only two of the items fell on the floor when Defendant slammed the food slot closed. Plaintiff states that after Defendant closed the slot, she discontinued processing his mail because he asked to view the contents of his envelope to assure that all his originals had been returned before he signed for legal copies. Plaintiff states that Defendant told him she did not want him telling her how to do her job. Plaintiff asserts that on June 22, 2005, he asked Defendant if she had processed the mail she took on June 20, 2005, but Defendant just laughed. Plaintiff wrote to the business office and Karen Dickson responded by stating that the only mail they had processed for Plaintiff was three

disbursements on June 17, 2005. Plaintiff then wrote a grievance on Defendant for failing to process his mail. Plaintiff claims that Defendant never gave his mail to mail room personnel so that it could be mailed to the district court.

> According to the misconduct hearing report, the hearing officer found:
>
> On 6/20/05 the prisoner exposed his penis to the Case Manager. This exposure was intentional as he approached the slot when Case Manager was at his door for his legal mail and told her," Ahh, come on, Phillipson" when she told him to cover up. This exposure was not for a legitimate purpose or in a legitimate manner as at the time the prisoner was masturbating. Prisoner claims that the Case Manager was not at his door at this time. She was and the video that the prisoner requested proved that point. Case Manager factual and credible in her claims. Charge upheld.

(*See* docket #13, Exhibit C.) The undersigned concludes that Defendant is correct in asserting that Plaintiff's sexual misconduct was a valid reason for ceasing to process his mail on June 20, 2005.

Plaintiff also claims that Defendant failed to deliver the mail which had already been processed to the mail room and continued to refuse to process his mail on June 21, 2005. This mail apparently consisted of grievance appeals. Plaintiff asserts that Defendant's conduct violated his First Amendment right to seek redress through the exhaustion of grievances. The Sixth Circuit has indicated that the filing of grievances is constitutionally-protected conduct for which a prisoner cannot be retaliated against. *Shehee v. Luttrell*, 199 F.3d 295, 300-301 (6th Cir. 1999), *cert. denied*, 120 S. Ct. 2724 (2000). However, a prisoner has no constitutional right to any effective grievance procedures or access to any such procedure voluntarily established by the state. See *Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994), *cert. denied*, 510 U.S. 1022 (1995) (collecting cases); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991); *Lutchey v. Wiley*, No. 98-3760, 1999 WL 645951, at **1 (6th Cir. Aug 13, 1999); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7,

2000); *Miller v. Haines*, No. 97-3416, 1998 WL 476247, at *1 (6th Cir. Aug. 3, 1998); *Saylor v. O'Dea*, No. 96-6685, 1997 WL 693065, at *2 (6th Cir. Oct. 31, 1997); *Wilcox v. Johnson*, No. 95-1754, 1996 WL 253868, at *1 (6th Cir. May 13, 1996). Michigan law does not create a liberty interest in the grievance procedure. *See Wilcox*, 1996 WL 253868, at *1; *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. March 28, 1994). Therefore, the undersigned finds that Plaintiff's does not have an independent First Amendment right to file a grievance.

However, Plaintiff also claims that Defendant improperly retaliated against him for asking Defendant why she would not allow him to place the time on the disbursements, and asking to see Defendant's watch for the correct time because Defendant had placed the wrong time on the other disbursements. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

As noted above, Plaintiff was found guilty of engaging in sexual misconduct, which caused Defendant to cease processing his mail on June 20, 2005. Plaintiff contends that Defendant's refusal to process his mail on subsequent dates was retaliatory. However, Plaintiff fails to show that he was engaged in protected conduct or that the exercise of the protected right was a substantial or

motivating factor in the Defendant's alleged retaliatory conduct. Therefore, the undersigned concludes that Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

Defendant claims that she is entitled to summary judgment on Plaintiff's Fourth Amendment claim. It has long been accepted that prison officials may inspect an inmate's ordinary mail. *See for example Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974). Legitimate penological interests justifying this practice are obvious. "The possibility that contraband will be enclosed in letters, even those from apparent attorneys, surely warrants prison officials' opening the letters." *Id.* at 577. In addition, in *Hudson v. Palmer*, 468 U.S. 517, 525-526, 104 S. Ct. 3194, 3199 (1984), the Supreme Court held that prisoners have no reasonable expectation of privacy in their cells, and upheld unannounced cell searches. In the opinion of the undersigned, the same analysis would fully apply to searches of a prisoner's personal property.

Further, in *Hudson*, the United States Supreme Court noted that the same reasons which led it to conclude that the Fourth Amendment did not prohibit searches of a prisoner's cell, applied with equal force to seizures. *Id.* at 528 n 8. The Court stated that "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.* The Supreme Court further stated that although the Fourth Amendment does not protect against seizures in a prison cell, an inmate's property cannot be destroyed with impunity, noting that the respondent in *Hudson* had adequate state remedies even apart from inmate grievance procedures. *Id.* In the opinion of the undersigned, this analysis applies equally to a prisoner's mail. Plaintiff in this case has not demonstrated the absence of adequate state remedies for defendants' alleged misconduct. Therefore, plaintiff's claim that his Fourth Amendment right to be free from unreasonable searches and seizures was violated should be dismissed.

Defendant claims that she is entitled to summary judgment on Plaintiff's Fourteenth Amendment equal protection claim. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff claims that he is African American and that Defendant is Caucasion. However, Plaintiff fails to allege any specific facts showing that the difference in race motivated Defendant's conduct. Because Plaintiff's equal protection claim is entirely conclusory, Defendant is entitled to summary judgment.

Finally, Defendant claims that she is entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations

by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40.  *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

> The Sixth Circuit has observed:
>
> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful.  *Anderson*, 483 U.S. at 639-40.  Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights.  *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983.  Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty.  *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten).  *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted.  *Siegert v. Gilley*, 500 U.S.

226, 232 (1991); *Turner*, 119 F.3d at 429.  If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429.  These are both purely legal questions.  The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights.  *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991).  As noted above, Plaintiff has failed to show that there is a genuine issue of material fact with regard to the merit of his claims.  Therefore, Defendant is entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's motion for summary judgment.  Accordingly, it is recommended that Defendant's Motion for Summary Judgment (Docket #12) be granted and this case dismissed in its entirety.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

        /s/ Timothy P. Greeley  
        TIMOTHY P. GREELEY  
        UNITED STATES MAGISTRATE JUDGE

Dated:  August 14, 2007